***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Hall, along with the briefs and arguments on appeal. The Full Commission AFFIRMS the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at and following the hearing on 18 May 1998 as:
 STIPULATIONS
1. Stipulated Exhibit 1 Plaintiff's Medical Records and Industrial Commission Forms.
2. Stipulated Exhibit 2 Plaintiff's Individual Payroll Record.
3. Stipulated Exhibit 3 Defendant's Work Schedules for Employees.
4. Stipulated Exhibit 4 McDowell Hospital Patient Instructions dated 2/9/03.
 ***********
Based upon all of the competent, credible, and convincing evidence of record, the Full Commission finds the following additional:
 FINDINGS OF FACT
1. At the time of the hearing, Plaintiff was 48 years old and living in Nebo, North Carolina. Her work history includes mostly positions in textile mills prior to her employment with defendant.
2. On February 9, 2003, defendant employed plaintiff as a waitress.
3. The defendant's restaurant contained 13 booths, 2 tables, and 10 stools. Plaintiff was the only waitress on duty when she worked. Plaintiff worked roughly 40 hours per week and was paid $2.75 an hour plus tips.
4. Plaintiff's tip income is inaccurate as listed on the payroll sheets kept by defendants. Plaintiff's tip income was apparently manipulated on a weekly basis so that her gross income (salary plus tips) was exactly minimum wage. The plaintiff testified that defendant told her to report tip income only "enough to make up to minimum wage." In actuality, the plaintiff's tip income was approximately $100.00 per day.
5. Considering her salary plus tips, plaintiff's average weekly wage at the time of the accident was $500.00, yielding a compensation rate of $333.33.
6. Defendant-Michelle Loftis testified that she owned RM Enterprises as sole proprietor since January 1, 2003 and that she had 14 employees when she first took over the business. On February 9, 2003, Defendant regularly employed 15 employees. During this time period, defendant refused or neglected to secure workers' compensation coverage for her employees. Defendant went on to testify that she sold the business after three months. Defendant operated her business for 90 days, the first three months of 2003, without securing workers' compensation insurance.
7. On February 9, 2003, plaintiff was in the process of busing a table and carrying dishes into the kitchen, when she tripped over the cord of an ice cream freezer and fell to the floor, striking her head on a bus cart as she fell. As she attempted to get onto her feet, she accidentally struck her back on the ice cream box.
8. Shortly thereafter, plaintiff complained of pain in her back, as well as dizziness. Because she was the only waitress in the restaurant, she decided to forego immediate medical treatment and finished her shift.
9. Plaintiff finished her shift at 6:00 a.m. on the morning of February 9, 2003. Later that day, plaintiff went to McDowell Hospital, where she reported that she had fallen at work at approximately 4:30 a.m. after tripping over a cord, thereby injuring her back and striking her head. The emergency room physician's diagnosis was a lumbar strain, as well as an abrasion to the forehead.
10. On February 9, 2003, plaintiff reported the accident to defendant, Michelle Loftis. After numerous inquiries of Michelle Loftis regarding workers' compensation insurance, Ms. Loftis told plaintiff she would just have to let her go. Plaintiff was terminated on February 25, 2003. Defendant's termination of plaintiff was retaliatory in nature. Plaintiff was still experiencing significant pain at the time of her termination.
11. On March 14, 2003, plaintiff returned to McDowell Hospital and was diagnosed with "mid thoracic and lumbar pain with left sciatic involvement from a work related injury on February 9, 2003." Plaintiff was given medication and referred to McDowell Internal Medicine, where she treated with Dr. Mark Burton on April 3, 2003. Plaintiff underwent a CT scan of the head and physical therapy for her back. Plaintiff returned to Dr. Burton's office in May and June 2003, underwent a CT scan of the lumbosacral spine, and was ultimately referred to Dr. Mark Moody, an orthopaedic surgeon.
12. Plaintiff presented herself to Dr. Moody at SpineCarolina on July 3, 2003. Dr. Moody stated that plaintiff's head and back injuries were "work related occurring February 9, 2003." He further stated that plaintiff needed to be placed in a functional restoration work hardening program, but was not a surgical candidate.
13. After her termination from defendant, plaintiff attempted to find work for six months, with no success. During this period, Dr. Moody assigned a 5% permanent partial disability rating to the plaintiff's back, as well as assigning her physical restrictions of no repetitive bending and no lifting over ten pounds.
14. In August 2003, Plaintiff secured a position as a deli worker at a grocery store.
 ***********
The foregoing stipulations and findings of fact engender the following:
 CONCLUSIONS OF LAW
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-(2).
2. The parties are properly before the Commission and the Commission has jurisdiction over the parties and over the subject matter. N.C. Gen. Stat. § 97-(2).
3. On February 9, 2003, plaintiff sustained an injury by accident arising out of and in the course and scope of her employment with defendant. N.C. Gen. Stat. § 97-2(6).
4. Although neither party has clean hands regarding the accuracy of plaintiff's documented wages at the time of the accident, the available evidence, taken with the third method of calculation under N.C. Gen. Stat. § 97-2(5), puts plaintiff's average weekly wage at the time of the accident at $500.00, yielding a compensation rate of $333.33.
5. As a result of her injury by accident, Plaintiff is entitled to have defendant pay $4,948.60 for all related medical expenses incurred. N.C. Gen. Stat. §§ 97-25; 97-25.1.
6. Plaintiff is entitled to temporary total disability benefits at the rate of $333.33 per week for the period she was disabled. N.C. Gen. Stat. § 97-29.
7. Plaintiff is entitled to 15 weeks of permanent partial disability benefits commensurate with a 5% permanent disability rating to the back. N.C. Gen. Stat. § 97-31(23).
8. Any employer required to secure the payment of compensation who refuses or neglects to secure such compensation shall be punished by a penalty of one dollar ($1.00) for each employee, but not less than fifty dollars ($50.00) nor more than one hundred dollars ($100.00) for each day of such refusal or neglect, and until the same ceases. N.C. Gen. Stat. §97-94(b).
9. Michelle Loftis had the ability and authority to bring her company, R M Enterprises, into compliance with N.C. Gen. Stat. § 97-93 and may be assessed a penalty equal to 100% of the amount of compensation due to the business' employees injured during the time that R M Enterprises failed to comply with N.C. Gen. Stat. § 97-93. N.C. Gen. Stat. § 97-94(d).
 ***********
In accordance with the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay $4,948.60 for medical expenses incurred by the Plaintiff as a result of her compensable injury.
2. Defendant shall pay 26 weeks of temporary total disability benefits at the rate of $333.33 per week, totaling $8,666.65.
3. Defendant shall pay permanent partial disability compensation for the 5% permanent partial disability rating to Plaintiff's back, totaling $4,999.95.
4. A reasonable attorney's fee of twenty-five percent (25%) of the accrued compensation awarded to plaintiff herein is approved for plaintiff's counsel and shall be deducted from the lump sums due plaintiff and paid directly to plaintiff's counsel.
5. Pursuant to N.C. Gen. Stat. § 97-94(b), a penalty is assessed against Michelle Loftis d/b/a R M Enterprises in the amount of $4,500.00. This amount shall be made by a check payable to the Industrial Commission and sent directly to the Industrial Commission.
6. Pursuant to N.C. Gen. Stat. § 97-94(d), a penalty is assessed against Michelle Loftis, individually, in the amount of $18,615.20. This amount shall be made by a check payable to the Industrial Commission and sent directly to the Industrial Commission.
7. Defendant shall pay the costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER